IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL AND JESSICA STANTON,

    Plaintiffs,

    v.

QBE INSURANCE CORPORATION, a
foreign business corporation; COMMUNITY
ASSOCIATION UNDERWRITERS OF
AMERICA, INC., a foreign business
corporation; GREENWICH INSURANCE
COMPANY, a foreign business corporation;
UNKNOWN INSURERS 1-5,

    Defendants.

Case No. 3:17-cv-00565-SB

**OPINION AND ORDER**

**BECKERMAN, Magistrate Judge.**

Michael and Jessica Stanton (collectively "the Stantons") filed a complaint against QBE Insurance Corporation ("QBE"),[1] alleging two state law contract claims arising from QBE's alleged failure to pay the costs necessary to restore the Stantons' townhome to its pre-loss condition. (ECF No. 1.) The parties filed cross-motions for summary judgment on the question

---

[1] The Court previously dismissed all of the other defendants. (ECF No. 14 (Order dismissing Greenwich Insurance Company); ECF No. 24 (Order dismissing Community Association Underwriters of America, Inc.); ECF No. 49 (Order dismissing Unknown Insurers 1-5).)

PAGE 1 – OPINION AND ORDER

of whether the Stantons have standing to bring an action against QBE. The Court heard oral argument on November 6, 2017. For the reasons that follow, the Court denies the Stantons' Motion for Summary Judgment (ECF No. 34) and grants QBE's Motion for Summary Judgment (ECF No. 38).

## BACKGROUND

The Stantons own a townhome in Portland, Oregon, that is a part of the Renaissance at Peterkort Woods Homeowners Association ("HOA").[2] The HOA's Declaration of Protective Covenants, Conditions, Restrictions, and Easements ("CC&Rs") and Bylaws provide for the rights and responsibilities between the HOA and its townhome owners. (Donald E. Templeton Decl. ¶¶ 2 and 3, Ex. 1 and 2, Aug. 4, 2017.) Pursuant to the requirement in the CC&Rs and Bylaws that the HOA provide insurance coverage for its members, including the Stantons, the HOA purchased a Homeowners Association Policy ("HAP") from QBE. Community Association Underwriters of America ("CAUA") was a managing general agent for QBE and served as the third-party program administrator of the HAP during the relevant time period. (William Walsh Decl. ¶¶ 2 and 3, Aug. 4, 2017.)

On June 5, 2015, a fire originating from the garage of an adjoining unit caused damage to the Stantons' townhome. CAUA, who oversaw the adjustment of the HOA's first party damage claim arising from the fire, made all payments from the claim directly to the HOA. (Walsh Decl. ¶ 3.) The HOA chose the contractors to perform the repairs for the loss. (Walsh Decl. ¶ 3.)

According to the Stantons, a dispute arose as to the cost of repairs and whether the work the contractors performed was sufficient to restore their townhome to its pre-loss condition. In order to recover damages from QBE for covered losses caused by the fire, the Stantons filed this action against QBE to enforce its rights as a third-party beneficiary under the HAP. QBE argues

---

[2] For purposes of the present motions only, QBE is not contesting ownership.

that the Stantons are barred from bringing this action because they have no standing under the HAP.

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

The sole issue for the Court is whether the Stantons may enforce the HAP as third-party beneficiaries. The Stantons argue that they are intended third-party beneficiaries of the insurance contract. QBE, however, contends that the Stantons are merely incidental beneficiaries and, as such, have no right of enforcement.

In Oregon, "a third party's right to enforce a contractual promise in its favor depends on the intention of the parties to the contract."[3] *Sisters of St. Joseph of Peace, Health, & Hosp. Servs. v. Russell*, 318 Or. 370, 374 (Or. 1994). There are "three categories of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries." *Id.* at 374-

---

[3] The parties agree that Oregon law controls whether the Stantons are intended third-party beneficiaries of the HAP.

PAGE 3 – OPINION AND ORDER

75. While donee and creditor beneficiaries "are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract[,]" incidental beneficiaries have no right of enforcement. *Id.* at 375. Below, the Court considers whether the Stantons qualify as either donee or creditor beneficiaries, i.e., intended beneficiaries, and thus have standing to bring this action against QBE.[4]

## I.     INTENDED OR INCIDENTAL BENEFICIARY

The Stantons assert that they are intended beneficiaries, either donee or creditor, of the HAP. A third party is a donee beneficiary if "it appears from the terms of the contract that the purpose of the promisee in obtaining the promise is 'to make a gift to the beneficiary or to confer upon him a right against the promisor.'" *Stonecrest Prop., LLC v. City of Eugene*, 280 Or. App. 550, 557 (Or. App. 2016) (quoting Restatement (First) of Contracts § 133 (1932); *Lord v. Parisi*, 172 Or. App. 271, 277-78 (Or. App. 2001)). A third party is a creditor beneficiary if "no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." *Lord*, 172 Or. App. at 278. Oregon courts examine the intent of the parties to determine "whether a nonparty is more than an incidental beneficiary." *Stonecrest*, 280 Or. App. at 557. Finally, although not required to confer beneficiary status, a failure expressly to name a third party as a beneficiary may serve as "an indication that the promisee did not intend to confer a right upon it." *Nw. Airlines v. Crosetti Bros.*, 258 Or. 340, 346-47 (1971).

In response, QBE argues that QBE and the HOA never intended to confer a direct right to enforce the relevant terms of the HAP to the individual owners. (Def.'s Resp. 3.) QBE contends

---

[4] QBE contends that with regard to third-party beneficiaries, Oregon law has not settled on whether to adopt the Restatement (First) of Contracts § 133 or the Restatement (Second) of Contracts § 302(1)(b). (Def.'s Resp. 2.) Regardless, QBE argues that the Stantons are only incidental beneficiaries under either version of the Restatement. (Def.'s Resp. 2.)

that the Stantons are "only incidental beneficiaries" under the HAP Property Coverage provisions. (Def.'s Resp. 3.) In support, QBE recites § 133 of the Restatement (First) of Contracts:

> (1) Where performance of a promise in a contract will benefit a person other than the promise, that person is . . . :
>
> (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promise to the beneficiary[.]

QBE concludes that the HOA "obviously did not intend to confer a gift to individual unit owners" and thus the Stantons "clearly do not qualify as donee beneficiaries." (Def.'s Resp. 4.)

In support of their respective arguments regarding standing, the parties rely on the HOA Bylaws, the terms of the HAP, and case law.

### A. Bylaws

In support of their contention that they are intended beneficiaries of the HAP, the Stantons rely first on the HOA Bylaws, which state in part:

> **7.1 Types of Insurance.** For the benefit of the Association and the Owners, the Board of Directors shall obtain and maintain at all times, and shall pay for out of the Operations Fund, the following insurance:
>
> (a) **Property Damage Insurance**
>
> (1) The Association shall maintain a policy or policies of insurance covering loss or damage from fire, with standard extended coverage and "all risk" endorsements, and such other coverages as the Association may deem desirable.
>
> (2) The amount of the coverage shall be for not less than one hundred percent (100%) of the current replacement cost of the Units and any improvements on the Common Areas . . . .

> (3) The policy or policies shall include . . . all fixtures, improvements and alterations comprising a part of each Unit as may be further defined by resolution of the Board of Directors.
>
> (4) Such policy or policies shall name the Association, for the use and benefit of the individual Lot Owners, as insured, and shall provide for loss payable in favor of the Association, as a trustee for each Owner and each such Owner's mortgagee, as their interests may appear.

(Douglas M. Bragg Decl. Ex. 2 at 28-29, Aug. 4, 2017.)

The Stantons maintain that by express terms the "Bylaws make abundantly clear that the HOA's purpose[,] in obtaining the QBE policy to insure the Stantons' townhome[,] was intended to be for the Stantons' benefit, mandated by the Bylaws." (Pls.' Mot. Summ. J. 4 (noting that the Bylaws required the HAP "be for the 'use and benefit' of the Owners, with the loss payable being the [HOA] as a trustee for the Owners" (emphasis omitted)).) Additionally, the Stantons contend that "QBE had actual notice of the HOA's obligation to procure insurance of the use and benefit of the Unit Owners . . . ." (Pls.' Mot. Summ. J. 5 (noting that QBE was in possession of the HOA Bylaws and the CC&Rs during the underwriting process).) According to the Stantons, "[f]rom the perspective of the HOA, there can be no doubt that the Owners were intended beneficiaries . . . ." (Pls.' Mot. Summ. J. 5.)

QBE argues that the terms of the Bylaws support the conclusion that QBE and the HOA did not intend to provide the Stantons with a direct right of enforcement. Relying on the same language in the Bylaws, QBE maintains that the "Bylaws make clear that for the benefit of the [HOA] and the Owners, the [HOA] shall maintain property damage insurance covering the Units and all fixtures, improvements and alterations in each Unit." (Def.'s Mot. Summ. J. 26.) In addition, while the HAP clearly benefits the unit owners, the HOA, as the only insured, is "the only party entitled to payment." (Def.'s Mot. Summ. J. 27.)

///

### B. HAP Provisions

Next, the Stantons direct the Court to provisions in the HAP as further evidence that QBE and the HOA intended to benefit the unit owners through their agreement:

> **Declarations**
>
> Coverage is provided for a clubhouse (10353 SW Taylor Street) and thirty four three-story frame homeowners association buildings containing two hundred seventeen residential units. The premises is located at . . . 10184 . . . SW Morrison Street, Portland, Washington County, OR 97225 [The address of the unit owned by Jessica and Michael Stanton].
>
> . . . .
>
> **I. PROPERTY DIRECT COVERAGES SECTION**
>
> We will pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. Coverage is provided only when a limit of insurance is shown in the "Declarations."
>
> . . . .
>
> 2. "UNITS"
>
> "Units" are covered only when a limit of insurance is shown in the "Declarations" for either one or both of the following:
>
> a. ORIGINAL SPECIFICATIONS
>
> Any property included in "units" which was initially installed in accordance with your homeowners association's original plans and specifications or a replacement of like kind and quality of such property.
>
> b. ADDITIONAL INSTALLATIONS
>
> Improvements and betterments made to "units." This coverage is in addition to the coverage provided in I.A.2.a. ORIGINAL SPECIFICATIONS, above.
>
> **VI. PROPERTY CONDITIONS SECTION**
>
> The Property Coverage Part is subject to the following conditions.

. . . .

F. OTHER INSURANCE AND RECOVERY

1. This insurance is primary with regard to any other insurance in the name of any unit owner which covers the same property.

. . . .

O. LOSS PAYMENT

. . . .

4. We will not pay for more than your financial interest in the "covered property."

5. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the "covered property."

(Bragg Decl. Ex. 1 at 3 and 8.)

The Stantons argue that the HAP "must be interpreted to provide for payment directly to the Unit Owners." (Pl.'s Mot. Summ. J. 5.) According to the Stantons, paragraphs 4 and 5 of the "Loss Payment" provision must be read together to find a right of enforcement on behalf of the unit owners, and to do otherwise would render the "LOSS PAYMENT" provision illusory. (Pl.'s Mot. Summ. J. 5-7.) Specifically, the Stantons argue that paragraph 4 makes a distinction for each party's "financial interest." As the HOA has no "financial interest" in the individual units, "the individual unit owners would necessarily be paid for their losses." (Pl.'s Mot. Summ. J. 7.)

In addition to "VI PROPERTY CONDITIONS" "F" and "O" cited above, QBE relies on several other provisions in the "Property Coverage Part" of the HAP:

**VI. PROPERTY CONDITIONS SECTION**

The Property Coverage Part is subject to the following conditions.

. . . .

### E. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of "covered property" will benefit from this insurance.

. . . .

### N. APPRAISAL

1. If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss.

. . . .

### O. LOSS PAYMENT

. . . .

8. If an insurance trustee is shown in the "Declarations," we will adjust losses with you, but we will pay the insurance trustee. If we

pay the trustee, the payments will satisfy your claims against us. [Here, the Declarations do not list a trustee.]

. . . .

### S. HOMEOWNER ACTS OR OMISSIONS

No act or omission by any homeowner will void the policy or be a condition to recovery under this policy. However, this does not apply to homeowners acting within the scope of their authority on behalf of your Association.

(Walsh Decl. Ex. 1 at 53-54, 59-60.)

    **C.**     **Case Law**

        **1.**     **Stantons' Case Law**

The Stantons argue that the cases most analogous to the circumstances here are two unpublished decisions from the Connecticut Superior Court, *Seeley v. State Farm*, 62 Conn. L. Rptr. 263, 2016 WL 2955772 (Conn. Sup. Ct. May 3, 2016), and *O'Connor v. QBE Ins. Corp.*, 60 Conn. L. Rptr. 135, 2015 WL 1588336 (Conn. Sup. Ct. March 12, 2015). (Pls.' Resp. 5.)

In *O'Connor*, condominium owners sued an insurance company directly for water damage to their unit caused by an adjoining unit. 2015 WL 1588336, at *1. Plaintiffs asserted standing as an intended third-party beneficiary of the contract between the insurance company and the condominium homeowners association. *Id.* at *3 ("[T]he primary issue before the court is whether an individual unit owner in a condominium complex has standing to bring a direct action against the condominium association's insurer as a third-party beneficiary when the policy of insurance names only the condominium association as the insured."). The state trial court found that the plaintiffs had standing because the policy was for the benefit of the plaintiffs, the policy covered the plaintiffs' unit and was the primary coverage for the unit, and the policy had a direct payment provision allowing the insurance company to deal directly with, adjust, and pay unit owners. *Id.* at *3, 5.

In *Seeley*, condominium owners sued an insurance company directly for water damage to their unit. 2016 WL 2955772, at *1. Plaintiffs asserted standing as an intended third-party beneficiary of the contract between the insurance company and the condominium homeowners association. *Id.* at *2. In *Seeley*, the court was not persuaded that "plaintiffs have definitively established their standing as third-party beneficiaries of the [insurance] contract." *Id.* at *3. However, the court found that, on a motion to dismiss, plaintiffs' allegations were "sufficient to establish a colorable and arguable claim that the plaintiffs have a specific personal and legal interest in the policy and that they have been specially and injuriously affected by [the insurance company's] refusal to pay their claim." *Id.* ("The facts that the . . . property insurance expressly covers the individual units and is primary with respect to any coverage obtained by the unit owners gives the plaintiffs at least a colorable claim to be third-party beneficiaries of the [insurance] contract.").

///

///

### 2. QBE's Case Law

QBE relies on a number of cases from different jurisdictions to support its argument that the Stantons are only incidental beneficiaries of the HAP. (Def.'s Mot. Summ. J. 20-21; Def's Reply 3, 5-6.) The Court first considers *DiMillo v. Travelers Prop. Cas. Co*, 789 F. Supp. 2d 194 (D. Me. 2011), a case in which a condominium owner sought to enforce coverage under a policy purchased by the homeowners association. The insurer moved for summary judgment on the ground that the condominium owner lacked standing to enforce the policy. *Id*. at 196. The court began its analysis by reviewing the terms of the policy and concluding that "nothing on the face of the insurance agreement between [the insurer] and the Association confers standing on [plaintiff]." *Id*. at 205.

Next, the court determined that the policy terms were in accordance with Maine's statutory requirement that a homeowners association maintain property and liability insurance for its unit owners. *Id.* at 206. Additionally, as required by the statute, the policy "designat[ed] unit owners [as] named insureds with respect to liability." *Id.* In contrast, the Maine statute does not require the insurance company to "provide property coverage to the unit owners" and the policy "does not make them named insureds with respect to property coverage." *Id*.

In concluding that plaintiff was not an intended third-party beneficiary of the contract between the insurer and the homeowners association, the court also relied on the "congruen[ce]" between the association bylaws, the policy, and the state statutory provisions regarding the required coverage. *Id*. at 210-12 ("As the [state statutes] and the bylaws make clear, the Association intended to maintain control even for policies that covered individually-owned property.").

QBE also cites the decision in *May v. Mid-Century Ins. Co.,* 151 P.3d 132, 134 (Okla. 2006), in which the unit owner brought an action against the insurer for failure to pay for fire loss. The issue for the Oklahoma Supreme Court was "whether the plaintiff (condominium unit owner) [had] a claim

against the condominium association's insurer whose policy was issued to the . . . association." *Id.* Plaintiff argued that she was an intended third-party beneficiary of the policy because, among other things, an endorsement provided that the insurer "may adjust losses with owners of damaged property if other than the [association]" and, if it did, "such payments will satisfy your claims against us for the owners' property." *Id.* at 137 n.18. The court disagreed and found that the provision gave the "insurer exclusive choice to settle covered losses directly with the unit owners or with the Association 'for the account' of the unit owners." *Id.* at 140. In fact, based on the policy terms, the majority found the issue of third-party enforcement to be "crystal clear." *Id.* at 140-41 ("[T[he parties to the policy . . . did not intend to convey on any third-party unit owner a legally enforceable right of recovery against Insurer.").

Finally, QBE relies on *Ryan v. Travelers Indem. Co.*, No. 2:13-cv-00607-JAM-KJN, 2013 WL 3289075 (E.D. Cal. June 28, 2013). In *Ryan,* a unit owner brought an action against the condominium association's insurer for water damage sustained to her unit. The court in *Ryan* held that the plaintiff was not an intended beneficiary of the policy between the association and its insurer. *Id.* at \*4-5. "The mere fact that an insurance policy is purchased by a homeowners association with dues paid by individual members, or even that it is purchased to benefit those members, is insufficient to establish that individual members are intended beneficiaries of the insurance contract . . . ." *Id.* at \*5.

### D. Analysis

To resolve the issue of the Stantons' standing to bring this action, the Court must determine whether "in light of the surrounding circumstances," the parties' agreement "manifested an intention" that QBE be directly liable to the unit owners for nonperformance. *Stonecrest Prop.*, 280 Or. App. at 559. "In assessing the relevant circumstances, courts must be careful to distinguish between the consequences to a third party of a contract breach and the

intent of a promisee to give a third party who might be affected by that contract breach the right to enforce performance under the contract." *Dimillo*, 789 F. Supp. 2d at 208 (quotations and citation omitted); *see also German All. Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

The Court agrees with QBE that the Stantons are incidental, not intended, beneficiaries of the HAP with no standing to enforce its terms. As in *DiMillo,* the HOA Bylaws, Or. Rev. Stat. § 94.680, and the HAP are congruent here. Specifically, the Bylaws require the HOA to "obtain and maintain" property damage insurance. The Bylaws further provide that either the HOA or a named trustee "shall have exclusive authority to negotiate losses under any property . . . policy." (Bragg Decl. Ex. 2 at 30); *see also* Or. Rev. Stat. § 94.680 ("If . . . bylaws provide that the homeowners association has the sole authority to decide whether to repair or reconstruct a unit that has suffered damage . . . the board of directors shall obtain blanket all-risk insurance for the full replacement cost of all structures in the planned community.") The HOA did not appoint an insurance trustee and thus retained exclusive authority to negotiate loss under the HAP.[5]

Reading the HAP in its entirety, the Court is persuaded that the parties did not intend the unit owners to be direct third-party beneficiaries of the contract. First, the HAP expressly states that the HOA is the "Named Insured" and provides, throughout the policy, that "the words 'you' and 'your' refer to the Named Insured." (Bragg Decl. Ex. 1 at 2, 8.) Next, Condition E unequivocally states that "[n]o person . . . other than you [Named Insured] . . . will benefit from this insurance." (Bragg Decl. Ex. 1 at 12.) The HAP further provides that "[y]our rights and

---

[5] The Stantons do not explain how the third–party beneficiary analysis would change if the HOA had appointed a trustee.

duties under this policy may not be transferred without our written consent." (Bragg Decl. Ex. 1 at 89 ("Common Policy Conditions").) Finally, while paragraph 5 of the "Loss Payment" provision *allows* QBE to negotiate directly with the unit owner, that provision does not evince an intent to create a right in the unit owner directly to enforce the terms of the HAP. Rather, the "right" created in paragraph 5 belongs to QBE, to choose to negotiate either with the HOA or the unit owner directly. *See May*, 151 P.3d at 140 (holding that this provision confers a benefit to the insurer); *see also Ruger v. QBE Ins. Corp.*, No. 3226 EDA 2011, 2013 WL 11266161, at *4 (Penn. Sup. Ct. Apr. 12, 2013) (declining to construe the "Loss Payment" provision as providing "the right to sue QBE directly for a loss for which the Association is solely responsible . . . . The Association's intent in contracting with QBE was to comply with [the] bylaws, not to benefit the individual unit holders . . . ."). In addition, the HAP provides that payment by QBE to either the HOA or the unit owner satisfies QBE's obligation to its insured (i.e., the HOA).

With regard to the Stantons' argument that when read together, paragraph 4—QBE "will not pay for more than your financial interest—and paragraph 5—QBE "will not pay the owners more than their financial interest"—of the "Loss Payment" provision create a direct benefit to the unit owners, the Court agrees with the reasoning in *May*. Like the Stantons, the owner in *May* argued that because the homeowners association had no financial interest in her separate property, the association was "not entitled to indemnity for the loss of covered property owned by her." 151 P.3d at 141. The court held that there was no conflict between the "Loss Payment" provision and the policy language permitting the insurance company to pay the association directly for covered losses to individual units. *Id*. at 141-42 ("In the latter case, the Association would receive those funds for the benefit of the unit owner rather than as indemnity for some covered losses of its own.").

The Court does not find the reasoning in *O'Connor* and *Seeley* to be persuasive. In *O'Connor*, the court applied Connecticut state law that analyzes plaintiffs' third-party standing under a theory of "classical aggrievement." 2015 WL 1588336, at *5 ("More fundamentally, in Connecticut the focus in considering 'classical aggrievement' is, first, whether a party has a specific, personal, and legal interest in the subject matter, and, second, whether that interest has been specially and injuriously affected."); *see also Wilcox v. Webster*, 294 Conn. 206, 214 (Conn. 2009) ("Standing is established by showing that a party is either statutorily or classically aggrieved."). That is not the standard for analyzing third-party beneficiary status in Oregon. *Cf. Snohimish Cnty. Pub. Util. Dist. No. 1. v. Pacificorp*, 745 F. Supp. 1581, 1584 (D. Or. 1990) ("The parties must intend that the promisor assume a direct obligation to the intended beneficiary.").

In *Seeley*, the court simply determined that plaintiffs met their burden on a motion to dismiss to show a "colorable claim" as an intended third-party beneficiary. 2016 WL 2955772, at *3. In fact, the court in *Seeley* was not persuaded by its sister court's reasoning in *O'Connor*. *See Seeley*, 2016 WL 2955772, at *3 ("This court, unlike the court[] in *O'Connor* . . . is not persuaded that the plaintiffs have definitively established their standing as third-party beneficiaries of the contract.").

The Court finds that there is no disputed issue of fact on the question of whether the HOA and QBE intended to confer in the HAP a direct right of enforcement to the unit owners. The HOA is the only named insured under the HAP, the HAP provisions are in accordance with the parties' intention to provide property coverage for the unit owners to comply with the Bylaws and state law, read as a whole the HAP does not create a right of enforcement for the individual unit owners, and there is no express intent to confer standing on the unit owners. While such an

express provision is not required, the Court declines to extend the HAP to cover "claims from numerous non-signatories . . . in contravention of its terms." *DiMillo*, 789 F. Supp. 2d at 211-12. As a result, the Stantons are merely incidental beneficiaries and do not have standing to enforce the HAP.[6]

## CONCLUSION

Based on the foregoing, the Court DENIES the Stantons' Motion for Summary Judgment (ECF No. 34), and GRANTS QBE's Motion for Summary Judgment (ECF No. 38). Accordingly, the Court DISMISSES the Stantons' Complaint (ECF No. 1).

**IT IS SO ORDERED.**

DATED this 9th day of November, 2017.

_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[6] QBE notes that the Stantons' lack of standing to enforce the HAP does not leave them without a remedy. (Def.'s Mot. Summ. J. 27.) Specifically, the Stantons may pursue their claims against the HOA, or the HOA may file a claim directly against QBE. (Def.'s Mot. Summ. J. 27.) Indeed, the HOA and QBE have entered into a tolling agreement relating to such potential claims. (Def.'s Mot. Summ. J. 27.) The Stantons suggest that allowing them to pursue their claims directly against QBE is the more efficient course, but the Court cannot allow the Stantons to stand in the shoes of the HOA in the interest of efficiency when doing so contravenes the express terms of the insurance contract.